Law Offices of Harjot Singh, P.C.

Harjot Singh, Bar No. 5507751

21 Holman Blvd, Suite 3

Hicksville, NY 11801

Tel. No.: 917-522-5600

hsingh@harjotlaw.com

Attorney for *Petitioner* SUNILKUMAR GANDABHAI PATEL

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Sunilkumar Gandabhai Patel<br>*Petitioner,*<br><br>V.<br><br>RAUL MALDONADO JR., *in his official capacity as Warden, Brooklyn Metropolitan Detention Center*; WILLIAM JOYCE, *in his official capacity as Acting New York Field Office Director; U.S. Immigration & Customs Enforcement*; TODD M. LYONS, *in his official capacity as Acting Director of Immigration & Customs Enforcement;* TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States of America.* | No. A# 235-321-420<br><br>AMENDED<br><br>PETITIONER'S NOTICE OF MOTION AND EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>Challenge to Unlawful Incarceration:<br>Request for Declaratory and Injunctive Relief |

AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

## INTRODUCTION

1. Petitioner, SUNILKUMAR GANDABHAI PATEL, by and through his undersigned counsel, hereby files this petition for writ of habeas corpus to remedy Respondents-Defendants' ("Respondents") unlawful re-detention of SUNILKUMAR GANDABHAI PATEL without any process, in violation of the Fifth Amendment to the U.S. Constitution. This matter was previously heard by Honorable Judge Nusrat J. Choudhury on May 8, 2026, at 2:00 PM, during which it was ordered that an amended complaint be submitted before this Court.

2. SUNILKUMAR GANDABHAI PATEL is a native and citizen of India. SUNILKUMAR GANDABHAI PATEL entered the United States with inspection as a B2 Visitor, on June 4, 2024, arriving at JFK International Airport. The Petitioner-Plaintiff, came to the United States with his spouse, Ankitaben Patel (A# 235-321-421) and their minor child, Vamika Patel (A# 235-321-419) (current age four (4) years and three (3) months). In November 2024, SUNILKUMAR GANDABHAI PATEL and his family filed their affirmative I-589 application before USCIS.

3. SUNILKUMAR GANDABHAI PATEL properly filed his asylum application with USCIS, in pursuant to 8 CFR § 208.2 and 8 CFR § 1208.2 which states that USCIS has jurisdiction over affirmation applications. As the petitioner was present physically in the United States of America and not issued a Notice to Appear upon entry, the petitioner timely filed his I-589, Application for Asylum and for Withholding of Removal before USCIS. Since then, Petitioner had done everything the government asked him to do; he has diligently attended every United States Citizenship and Immigration Services ("USCIS") appointment and check-in.

4. SUNILKUMAR GANDABHAI PATEL filed an asylum application with USCIS. The application was received by USCIS on November 26, 2024, and issued a receipt number in this matter the same day, November 26, 2024, (Receipt Number: MGL2592388245). The filing of respondent's asylum application was done within one year of their entry in the United States pursuant to INA § 208 (a)(2)(B).

5. The petitioner, SUNILKUMAR GANDABHAI PATEL, has not committed any crimes in the United States or anywhere else in the world. He has no adverse criminal history.

6. Over the last almost two years in which he has lived at liberty, SUNILKUMAR GANDABHAI PATEL has complied with all obligations of supervision and USCIS orders. SUNILKUMAR GANDABHAI PATEL never missed any appointments scheduled by USCIS.

7. The petitioner, SUNILKUMAR GANDABHAI PATEL, was scheduled for an Individual Hearing on May 7, 2026, and his I-589, Application for Asylum and for Withholding of Removal was denied. SUNILKUMAR GANDABHAI PATEL currently has a case appeal pending before Board of Immigration Appeals ("BIA") as of May 8, 2026.

8. SUNILKUMAR GANDABHAI PATEL resided in New York, NY with his family. The Petitioner and his spouse have one United States Citizen child, their son Vyom Sunilkumar Patel (current age eight (8) months), born on August 6, 2025, in Queens, NY (long Island Jewish Medical Center). The petitioner's daughter, Vamika Patel, is currently attending P.S. 018 Winchester, grade 3-K, located at 86-35 235th Court, Queens, NY 11427. The petitioner's spouse, Ankitaben Patel is a stay-at-home mom, as she is raising their two minor children. The petitioner, SUNILKUMAR GANDABHAI PATEL, was the head of household and was employed by The Smoke Factory, located at 490 Elmont Road, Elmont NY 11003, at the time of his detention. The detention of the petitioner has caused emotional strain and financial hardship for his family.

9. SUNILKUMAR GANDABHAI PATEL arrest and detention have caused him tremendous and ongoing harm. Every additional day SUNILKUMAR GANDABHAI PATEL spends in unlawful detention subjects him to further irreparable harm. SUNILKUMAR GANDABHAI PATEL will continue to suffer irreparable injury if he continues to be detained without due process.

10. The Constitution protects SUNILKUMAR GANDABHAI PATEL – and every other person present in this country – from arbitrary deprivations of her liberty and guarantees him due process of law. The government's power over immigration is broad, but as the Supreme Court has declared, it is subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). "Freedom from bodily restraint has always been at the

core of this liberty protected by the Due Process Clause from arbitrary government action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

11. By status and regulation, as interpreted by the Board of Immigration Appeals ("BIA"), ICE has the authority to re-arrest a noncitizen and revoke their bond, only where there has been a change in circumstances since the individual's release, 8 U.S.C. § 236.1(c)(9); *Matter of Sugay*, 17 I&N Dec. 647, 640 (BIA 1981). The government has further clarified in litigation that any change in circumstance must be "material." *Saravia v. Barr*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017). That authority is proscribed by the Due Process Clause because it's well-established that individuals released from incarceration have a liberty interest in their freedom. In turn, to protect that interest, on the particular facts of SUNILKUMAR GANDABHAI PATEL's case, due process requires notice and a hearing, prior to any revocation of his conditional release, at which he is afforded the opportunity to advance his arguments as to why his release should not be revoked.

12. That basic principle – that individuals placed at liberty are entitled to due process before the government imprisons them – has particular force here, where SUNILKUMAR GANDABHAI PATEL's detention was already found to be unnecessary to serve its purpose.

13. Therefore, at a minimum, to lawfully re-arrest SUNILKUMAR GANDABHAI PATEL, the government must first establish, by clear and convincing evidence and before a neutral decision maker, that he is a danger to the community or a flight risk, such that his re-incarceration is necessary.

14. SUNILKUMAR GANDABHAI PATEL respectfully seeks a writ of habeas corpus ordering the government to immediately release him from his ongoing, unlawful detention, and prohibit his re-arrest without a hearing to contest that re-arrest before a neutral decision maker. In addition, to preserve this Court's jurisdiction, SUNILKUMAR GANDABHAI PATEL also requests that this Court order the government not to deport him for the duration of this proceeding or transfer him outside of this Court's jurisdiction.

## JURISDICTION AND VENUE

15. A habeas corpus petition can be filed any person who is currently in detention, including immigration detention, and believes that their detention violates the US Constitution or federal law. A habeas petition does not merely seek review of the discretionary bond decision itself; rather, it challenges the legality and constitutionality of continued detention.

16. A Habeas Corpus petition can be filed when; the immigration judge denied bond based on legal error and where the government fails to prove danger or flight risk with reliable evidence. A habeas corpus petition may also be filed when a person [SUNILKUMAR GANDABHAI PATEL] is subject to be held in detention for a prolonged period of time without meaningful review and evidence. The Petitioner has an appeal pending before BIA and until BIA rules on his appeal, the Petitioner is subject to prolonged detention. The burden of proof falls on the Government to prove through clear and convincing evidence that the continued detention of the Petitioner is necessary. Without clear and convincing evidence for the prolonged detention of the Petitioner, his continued detention is a violation of due process and continued deprivation of his liberties.

17. The Petitioner herein challenges the legality of continued civil detention without constitutionally adequate process. *Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001)* states that detention cannot be indefinite or constitutionally excessive.

18. This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331, general federal question jurisdiction; 5 U.S.C. § 701, et seq., All Writs Act; 28 U.S.C. § 2241, et seq., habeas corpus; 28 U.S.C. § 2201, the Declaratory Judgment Act; Art , 1, § 9, CL. 2 of the United States Constitution (the Suspension Clause); Art. 3 of the United Sates Constitution, and the common law., the Fourth and Fifth Amendments to the U.S. Constitution, and 5 U.S.C. §§ 701-7-6 (Administrative Procedure Act).

19. This Court has jurisdiction to review bond hearings for errors of law, including as to whether the IJ properly concluded someone is a flight risk or danger to the community. Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024).

20. Venue is proper in this district and division pursuant to 28 U.S.C. §2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because SUNILKUMAR GANDABHAI PATEL is physically detained within this District at MDC Brooklyn Detention Center.

## EXHAUSTION IS EXCUSED AS FUTILE, AND THIS COURT HAS HABEAS JURISDICTION UNDER § 2241

21. Petitioner properly invokes this Court's habeas jurisdiction because exhaustion of administrative remedies before the Board of Immigration Appeals ("BIA") would have been futile, inadequate, and unduly prejudicial.

22. The Respondents have argued that the Petitioner has not exhausted that the administrative remedies available to him at his disposal, citing *Rojas v. Genalo*, No. 25-cv-6543, 2026 WL 275991, at *1 (E.D.N.Y. Feb. 3, 2026) (Komitee, J.); *see also Castillo Lachapel v. Joyce, et al.*, No. 25- cv- 4693, 25 WL 1685576, at *3 (S.D.N.Y. June 16, 2025) (quoting *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018)) ("'[a] habeas petitioner must normally exhaust administrative remedies before seeking federal court intervention'"); *accord, Fontanelli v. Francis*, No. 25-cv- 7715, 2025 WL 2773234, at *5-8 (S.D.N.Y. Sept. 29, 2025). *See also Capunay Guzman v. Joyce, et al.*, No. 25-cv-4777, 786 F. Supp.3d 865, 870 (S.D.N.Y. June 17, 2025); *Roman v. Decker*, No. 20-cv-3752, 2020 WL 4273823, at * 7 (S.D.N.Y. July 24, 2020); *Paz Nativi v. Shanahan*, No. 16- cv-8496, 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) ("before immigration detention may be challenged in federal court . . . exhaustion is generally required as a prudential matter"(collecting cases)). The exhaustion requirement "aims to provide the agency with a chance to correct its own errors, 'protect[ ] the authority of administrative agencies,' and otherwise conserve judicial resources by 'limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary.'" *Capunay Guzman*, 786 F.Supp.3d at 869 (*quoting Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.)). Thus, courts in this district have required those challenging their detention under Section 1226(a) to first exhaust administrative remedies. *See, e.g., Rojas*, 2026 WL 275991, *1 (denying habeas petition in light of failure to exhaust).

23. The Petitioner's bond request before the Immigration Judge was denied on April 8, 2026. Filing an appeal before BIA would have proven to be futile and resulted in prolonged detention of the petition awaiting a decision from BIA. Following the 2025 BIA decision

in *Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025)*, which eliminated bond hearings for certain detainees, demonstrated that appealing to the BIA on this issue is futile. The BIA bond appeal timeline as of 2026, is approximately four to six months before BIA may reach a decision.

24. This Petition for Writ of Habeas Corpus was filed before this Court to streamline the release of the Petitioner before the Respondents custody given that his detention since February 20, 2026, has caused significant hardship for his spouse and his two children, who are currently living off the mercy and helpfulness of their community. AILA Executive Director Ben Johnson added, "Stripping immigration judges of their authority to conduct bond hearings or redetermine custody for potentially millions of people is a terrible plan. For no good reason, people who have been waiting patiently for years to get a fair day in court are now going to be scooped up and locked away." The BIA has issued more than 70 new precedential decisions, the vast majority of which resulted in a negative outcome for the noncitizen facing removal, including *Matter of Yajure-Hurtado,* Matter of C-A-R-R-, 29 I&N Dec. 13 (BIA 2025), Matter of C-C-, 23 I&N Dec. 899 (BIA 2006), which have made it increasingly difficult for "aliens" seeking asylum to present their case before BIA. *(https://www.americanimmigrationcouncil.org/blog/justice-departments-end-immigration-appeals-deportations/)*. According to the National Immigration Project, 98.7% of BIA/Attorney General decisions between January 2025 and February 2026 were against the interests of the noncitizens. (https://nipnlg.org/work/resources/bia-and-ags-systemic-destruction-noncitizens-rights-removal-proceedings). As shown in the chart attached, From January 31, 2025 through February 13, 2026, the BIA/AG have issued 77 decisions. Of these 77 decisions only one was clearly favorable to the noncitizen. The other decisions have instituted "pretermission," denying asylum seekers hearings on their cases; narrowed substantive asylum eligibility; narrowed eligibility for protection under the Convention against Torture; and radically altered the rules for bond eligibility. Under these circumstances and present pattern, filing an appeal before BIA after his bond request was denied by an Immigration Judge, would have proven to be futile as BIA has made is seemingly more difficult for noncitizens to present their case before BIA.

## I. Exhaustion Is Prudential in Habeas Cases and May Be Excused

In the habeas context, exhaustion is not jurisdictional but discretionary. The Supreme Court of the United States in *McCarthy v. Madigan, 503 U.S. 140 (1992)* state that courts may excuse exhaustion where; (1) Administrative remedies are inadequate, (2) Exhaustion would cause undue prejudice, or (3) Pursuit of remedies would be futile. Courts within the Second Circuit, including this Court, routinely apply these principles in immigration habeas cases.

## II. Exhaustion Is Excused Where the BIA Cannot Provide Meaningful Relief

Exhaustion is not required where the administrative body, in this case, BIA, lacks authority to resolve the claims presented. In *Singh v. Napolitano, 819 F.Supp.2d 200 (W.D.N.Y. 2011)*, the court held that noncitizens challenging the legality of their detention need not exhaust administrative remedies where the agency cannot provide the requested relief, particularly for constitutional challenges. In *Arango Marquez v. Immigration and Naturalization Service, 346 F.3d 892 (9th Cir. 2003)*, exhaustion was excused where the issue presented was purely legal and outside the agency's expertise. Here, Petitioner's claim is not merely a disagreement with the Immigration Judge's discretionary bond determination, but rather, the Petitioner challenges the legal and constitutional sufficiency of the bond process itself, including the legality of continued detention. The BIA lacks authority to adjudicate such constitutional claims or to grant the full habeas relief requested. Accordingly, exhaustion would have been futile.

## III. Requiring a BIA Appeal Would Result in Irreparable Harm Through Prolonged Detention

Courts in this Circuit recognize that prolonged detention without prompt judicial review constitutes irreparable harm, including but not limited to loss of employment, housing, and permanent financial hardship to his family. Requiring Petitioner to pursue a BIA appeal would have resulted in months of additional detention; as previously stated approximately four to six months of continued detention, during which time Petitioner would remain unlawfully deprived of liberty.

As recognized in *Hernandez v. Sessions, No. 16-56829 (9th Cir. 2017)*, prolonged detention implicates fundamental liberty interests that warrant immediate judicial review. Likewise, *Franco-Gonzalez v. Holder, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013)*, demonstrates that district courts may intervene directly where delay would perpetuate due process violations. The Respondents argued that the Petitioner could have filed an appeal with BIA if he disagreed with the decision rendered by the Immigration Judge; however, in this case, filing an appeal with BIA would have resulted in the prolonged detention of the Petitioner despite any valid concern for his detention (e.g. danger to the community, gang affiliations, flight risk, etc.). In the EDNY, where immigration detainees are frequently held for extended periods, at times awaiting a decision from BIA, requiring exhaustion in this context would undermine the purpose of habeas review.

IV. **A BIA Appeal Would Have Been Futile Following the Immigration Judge's Bond Denial**

Appealing the Immigration Judge's bond denial to the BIA would have been futile because BIA reviews bond determinations under a highly deferential standard, rarely disturbing Immigration Judge findings. BIA will rarely disturb a custody determination issued by an Immigration Judge due to the broad discretion used by Immigration Judges during said bond proceedings. Of the 77 cases heard by BIA, 76 of those cases have been decided on in support of the decision rendered by the Immigration Judge. The BIA cannot remedy the constitutional deficiencies inherent in Petitioner's detention. The unsaid delay associated with waiting for BIA review and a decision to be rendered by BIA would have prolonged Petitioner's detention without realistic prospect of relief. Under these circumstances, courts routinely excuse exhaustion. See *McCarthy v. Madigan, 503 U.S. 140 (1992)*; *Singh v. Napolitano, 819 F.Supp.2d 200 (W.D.N.Y. 2011)*.

V. **This Court Has Jurisdiction Under 28 U.S.C. § 2241**

This Court has jurisdiction under 28 U.S.C. § 2241 to review the legality of Petitioner's detention. Habeas corpus remains the primary vehicle for challenging unlawful immigration detention, particularly where administrative remedies are ineffective or

futile or may result in prolonged detention of the Petitioner. The Petitioner's failure to appeal the Immigration Judge's bond denial to the BIA should be excused. Exhaustion would have been futile, inadequate, and prejudicial, resulting in prolonged unlawful detention. This Court therefore has proper jurisdiction to grant habeas relief in this matter.

## **BURDEN OF PROOF**

1. The Respondent's in reference to *Matter of Guerra, 24 I&N Dec. 37 (BIA 2006)* state that the burden of proof falls on the Petitioner to prove that he is not a danger to the community. Under this precedent decision by BIA, the "Guerra Factors," were stablished for determining bond eligibility. The factors include, (1) fixed address in the United States, (2) Length of residence in the United States, (3) family ties/potential for legal residency, (4) employment history, (5) appearance record in court proceedings, (6) any/all immigration violation, (7) any/all attempts to flee prosecution, and (8) manner of entry.

2. On February 20, 2026, the Petitioner was charged in Nassau County and later detained by ICE Officer(s) the same day. On March 30, 2026, the charges against the Petitioner were dismissed and sealed. The Petitioner requested a bond hearing from the Immigration Judge on April 1, 2026, and was scheduled for a bond hearing on April 8, 2026, at 8:30 AM. On April 3, 2026, at 9:54:24 PM, the Petitioner through his retained counsel submitted the following documents; "Exhibit A: Record of Respondent's Asylum Application, I-589 Receipt Notice, and Proof of I-589 Biometrics Taken, Exhibit B: Proof of Respondent's Legal Entry (I-94 and Passport Visa Page), Exhibit C: Copies of Respondent's Passport, New York Driver License, US Employment Authorization Card, and Proof of I-765 Approval, Exhibit D: Proof of Respondent's Fixed Address, Exhibit E: Sponsorship Letter, Copy of US Passport, and 2024 Tax Return, Exhibit F: Letter of Community Involvement from Shiv Shaakhti Peeth Hindu Temple." A copy of this submission has been submitted with this response as in **"Exhibit A."** On April 8, 2026, at 8:00:35 AM, the retained counsel for the Petitioner

submitted a Certificate of Disposition which showed that all charges against the Petitioner have been dismissed and sealed. Through the submission of these documents, the Petitioner did meet his burden of showing that he is not a flight risk, nor a danger to the community. The Petitioner and his family came to the United States on June 4, 2024, as a B2 visitor. In November 2024, the Petitioner and his family filed their I-589 Application for Asylum and for Withholding of Removal before USCIS pursuant 8 CFR § 208.2 and 8 CFR § 1208.2 which states that USCIS has jurisdiction over affirmation applications.

3. On their I-589 Application, which was submitted before USCIS, the respondent listed that he has been residing at 8297 Country Pointe Circle, Apt 1, Queens Village, NY 11427 since June 2024 (since their arrival in the United States). A copy of the Petitioner's initial I-589 Application and receipt notice issued by USCIS showing his residential address have been submitted with this motion as in **"Exhibit B,"** and **"Exhibit C."** On March 30, 2026, the Petitioner and his family moved to apartment 2 of the same building, changing their address to 8297 Country Pointe Circle, Apt. 2, Queens Village NY 11427. The Petitioner has been residing in the same building since June 2024. For almost two years the Petitioner has resided in the same building, which establishes that he has a "fixed residence." As well as meeting the burden of proof for establishing a fixed residence in the United States, the Petitioner also met the burden of establishing his length of residence in the United States from June 4, 2024, until present. Another key factor of the "Guerra Factors," includes family ties, as well as community ties. The Petitioner submitted a copy of his infant son's US passport and birth certificate showing his birth in the United States. The Petitioner also submitted a letter from his religious establishment (Mandir) which states he regularly visits the religious establishment and is a God-fearing individual. The Petitioner also submitted an affidavit from Rajat Loonia, a United States citizen who demonstrated his support and willingness to attest to the nature of the Petitioner. In his affidavit, Rajat Loonia provided his financially documents to show that he is willing and able to pay any bond amount set by the Immigration Judge and further assured the Immigration Judge that he will provide a stable environment for the Petitioner to assure he appears for all his

Immigration proceedings and hearings if he were to be released. Throughout his time in detention, the Petitioner has not received any violations and cooperated with the officers at the facility. By submitting a Certificate of Disposition, which shows that the charges against the Petitioner have been dismissed and sealed, the Petitioner provided evidence that he is not a danger to the community, which the Immigration Judge refused to admit into the record based on his own discretion. Prior to the charges on February 20, 2026, which were later dismissed on March 30, 2026, the Petitioner has no other criminal history. A key factor to consider from *Matter of Guerra, 24 I&N Dec. 37 (BIA 2006)*, is whether the Petitioner has made any attempts to flee prosecution. Since arriving in the United States on June 4, 2024, the Petitioner has not left the United States. The petitioner's family is in possession of his passport and if the Respondent's feel that the Petitioner still remains a flight risk, the Petitioner is willing to turn over his passport to this Court. With this response, as in **"Exhibit D,"** the Petitioner submits additional affidavits from his family and community attesting that he is nor a danger to the community or a flight risk.

VI. **The Burden of Proof falls on the Respondents to provide clear and convincing evidence that prolonged detention of the Petitioner is necessary**
Considering *Matter of Guerra, 24 I&N Dec. 37 (BIA 2006)* and the "Guerra Factors," the Petitioner met his burden of proving that he is not a danger to the community nor is he a flight risk. However, as much as it is the burden of the Petitioner to prove that he is not a danger to the community or a flight risk, it is also the burden of the government to show by clear and convincing evidence that the Petitioner is a danger to the community or a flight risk. In United States v. Salerno, 481 U.S. 739 (1987), the Supreme Court case upheld the Bail Reform Act of 1984 as constitutional, provided that the government proves by clear and convincing evidence that "no condition or combination of conditions will reasonably assure... the safety of any other person and the community." Similarly in United States v. Horton, No. 16-1574 (2d Cir. 2016), the Second Circuit clarified that even in cases involving a rebuttable presumption of danger (under 18 U.S.C. § 3142(e)), the government retains the "ultimate burden of persuasion" to show that a defendant is a danger to the community by clear and

convincing evidence. Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021), finds that the First Circuit ruled that in immigration detention cases, due process requires the government to prove by clear and convincing evidence that the individual poses a danger to the community or a flight risk, invalidating the previous practice of placing the burden on the detainee. In the matter of the Petitioner, the Respondents have provided no clear and convincing evidence that the Petitioner was or remains a danger to the community/flight risk and reasoning as to why his prolonged detention is deemed necessary. In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court ruled that the government cannot indefinitely detain immigrants. For detention to be constitutional, it must be justified by a strong special circumstance (like dangerousness) and not be indefinite. The Respondents have not met their burden of proof through clear and convincing evidence that the Petitioner is a danger to the community or a flight risk.

On April 7, 2026, the Petitioner's I-589, Application for Asylum and for Withholding of Removal was denied and on April 8, 2026, the Petitioner filed his appeal before BIA which is currently pending. A filing receipt of the appeal being filed with BIA has been attached herein as in **"Exhibit E."** It may take anywhere between six (6) months to one year for BIA to issuing a briefing schedule in this matter and the burden is on the Respondents to prove why the Petitioner should be subject to prolonged detention as he awaits a decision from BIA for his case appeal. The Petitioner's continued immigration detention violates the Due Process Clause of the Fifth Amendment because detention has become unreasonably prolonged without the Government meeting its burden to justify prolonged detention of the Petitioner. Under 8 U.S.C. § 1226(a), if detention becomes prolonged, Ninth Circuit precedent (via cases like *V. Singh v. Holder* and *Casas-Castrillon*) requires the government to prove by clear and convincing evidence that the noncitizen is a flight risk or danger to the community to justify continued detention.

In Velasco Lopez v. Decker, the Second Circuit held that prolonged detention under 8 U.S.C. § 1226(a) without constitutionally adequate procedural protections violates due process. The court explained that when detention becomes prolonged, the Government must justify continued incarceration by clear and convincing evidence that the individual detained [SUNILKUMAR GANDABHAI PATEL] presents either a danger to the community or presents to be a serious flight risk. The Second Circuit emphasized that liberty is the norm and detention prior to removal is the carefully limited exception. The Court further held that requiring a noncitizen to bear the burden of proving eligibility for release in a prolonged detention context creates a substantial risk of erroneous deprivation of liberty. Here, Petitioner has remained detained since February 2026 and is subject to a prolonged period of detention awaiting his decision from BIA despite the absence of any constitutionally sufficient showing by the Government that continued detention is necessary.

The Respondents failed to establish through clear and convincing evidence that Petitioner presents a danger to the community or a serious flight risk. The record demonstrates that Petitioner has substantial ties to the community, including his spouse and two minor children, as well a fixed residential history where he has been residing at the same address since he arrived in the United States with his family. Less restrictive alternatives to detention were not meaningfully considered such as ATD Monitoring and check-ins with his local ERO.

## **PARTIES**

1. Petitioner, Petitioner, SUNILKUMAR GANDABHAI PATEL, born on February 6, 1992, in Jetalpur, Mehsana, Gujarat, India. He is a native and citizen of India. He currently is scheduled for an Individual Hearing on May 7, 2026, at 8:30 AM. He is presently in civil immigration detention at MDC Brooklyn Detention Center.

2. Respondent, Raul Maldonado Jr., is the Warden of MDC Brooklyn (Brooklyn Metropolitan Detention Center. In his official capacity, he is the legal custodian of SUNILKUMAR GANDABHAI PATEL.

3. Respondent William JOYCE is the Acting Director of ICE and is named in his official Capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the removal of noncitizens. In his official capacity as head of ICE, he is the legal custodian of SUNILKUMAR GANDABHAI PATEL.

4. Respondent Todd M. LYONS is the Acting Director of Immigration and Customs Enforcement and is named in his official capacity. DHS is the federal agency encompassing ICE, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens in his capacity as Acting Director of Immigration and Customs Enforcement, Respondent Lyons has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); see also 8 U.S.C. § 1103(a). Respondent Lyons is the ultimate legal custodian of SUNILKUMAR GANDABHAI PATEL.

5. Respondent Todd BLANCHE is the Acting Attorney General of the United States and the most senior official at the Department of Justice. In that capacity and through his agents, he is responsible for overseeing the implementation and enforcement of the federal immigration laws. The Attorney General delegates this responsibility to the Executive Office for Immigration Review, which administers the immigration courts and the BIA. He has the authority to interpret immigration laws and adjudicate removal cases.

## **LEGAL BACKGROUND**

6. The Constitution Establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017)(quoting *Zadvydas*, 533 U.S. at 693). These due process rights are both substantive and procedural.

7. These protections extend to noncitizens facing detention, as "in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, (1987). Accordingly, "freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that (the Due Process) Clause protects." *Zadvydas*, 533 U.S. at 690.

8. Substantive due process requires that all forms of civil detention – including immigration detention bear a "reasonable relation" to a non-punitive purpose. See *Jackson v. Indiana*, 406 U.S .715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes of immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 53 U.S. at 690-92; see also *Demore v. Kim*, 538 U.S. 510 at 519-20, 527-28 (2003).

9. The procedural component of the Due Process Clause prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards.

10. In SUNILKUMAR GANDABHAI PATEL's particular circumstances, the Due Process Clause of the Constitution makes it unlawful for Respondents to re-arrest him without first providing a pre-deprivation hearing before a neutral decision maker to determine whether circumstances have materially changed since his admission in the United States since 2024, such that detention would now only be warranted on the basis that he is a danger or flight risk or danger to the community by clear and convincing evidence. SUNILKUMAR GANDABHAI PATEL has a spouse, two biological children, held steady employment and has formed roots in the United States. SUNILKUMAR GANDABHAI PATEL has a United States Citizen born son, Vyom Sunilkumar Patel, who is only eight (8) months old. SUNILKUMAR GANDABHAI PATEL based on the factual evidences, does not present to be a flight risk.

11. The statute and regulations grant ICE the ability to unilaterally revoke any noncitizen's immigration bond and re-arrest the noncitizen at any time. 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9). Notwithstanding the breadth of the statutory language granting ICE the power to revoke an immigration bond "at any time.' 9 U.S.C. 1226(b), in *Matter of Sugay*, 17 I&N Dec. at 640, the BIA recognized an implicit limitation on ICE's authority to re-arrest noncitizens. There, the BIA held that "where a previous bond determination has been made

by an immigration judge, no change should be made by the DHS absent a change of circumstance." *Id.* In practice, DHS "requires a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia*, 280 F. Supp. 3d at 1197 (emphasis added). The Ninth Circuit has also assumed that, under *Matter of Sugay*, ICE has no authority to re-detain an individual absent changed circumstances. *Panosyan v Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021)("thus, absent changed circumstances… ICE cannot detain Panosyan.").

12. ICE has further limited its authority as described in *Sugay,* and 'generally only re-arrests (noncitizens) pursuant to § 1226(b) after a material change in circumstances." *Saravia*, 280 F. Supp. 3d at 1197, aff'd sub nom. *Saravia* for A.H., 905 F.3d 1137 (quoting Defs. ' Second Supp. Br. At 1, Dkt. No 90) (emphasis added). Thus, under BIA case law and ICE practice, ICE may re-arrest a noncitizen who had previously released on bond only after a material change in circumstances. See *Saravia*, 280 F. Supp. 3d at 1176; *Matter of Sugay*, 17 I&N Dec. at 640.

13. ICE's power to re-arrest a noncitizen who is at liberty following a release on bond is also constrained by the demands of due process. See *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017)("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process"). In this case the guidance provided by *Matter of Sugay* – that ICE should not re-arrest a noncitizen absent changed circumstances – is insufficient to protect SUNILKUMAR GANDABHAI PATEL's weighty interest in his freedom from detention.

14. Federal district courts in California have repeatedly recognized the demands of due process and the limitations on DHS's authority to revoke a noncitizen's bond or parole set out in DHS's stated practice and *Matter of Sugay* both require a pre-deprivation hearing for a noncitizen on bond, like Ms. Zeng, before ICE re-detains her. *See, e.g., Clene C.D. v. Robbins*, No. 1:25-CV-01463-KES-SKO (HC), 2025 WL 3492118 (E.D. Cal. Dec. 4, 2025); *Carmen G.C. v. Robbins*, No. 1:25-CV 01648-KES-HBK (HC), 2025 WL 3521304 (E.D. Cal. Dec. 8, 2025); *Bilal A. v. Wofford*, No. 1:25-CV-01715-KES-HBK (HC), 2025 WL 3648366 (E.D. Cal. Dec. 16, 2025); *W.V.S.M. v. Wofford*, No. 1:25-CV-01489-KES-

HBK (HC), 2025 WL 3236521 (E.D. Cal. Nov. 19, 2025).,*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025); *Salcedo Aceros v. Kaiser*, 25-cv-06924-EMC, 2025 WL 2637503, at *8–12 (N.D. Cal. Sep. 12, 2025); *Jimenez Garcia v. Kaiser et al.*, 25-cv-06916-YGR, at *8–9 (N.D. Cal. Aug. 29, 2025); *Calderon v. Kaiser*, No. 5:25-cv-06695-AMO, 2025 WL 2430609, at *3 (N.D. Cal. Aug. 22, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *3–4 (N.D. Cal. Aug. 21, 2025). *Valencia Zapata v. Kaiser*, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025); *Lopez Benitez v. Francis*, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025). *Meza v. Bonnar*, 2018 WL 2554572 (N.D. Cal. June 4, 2018); *Enamorado v. Kaiser*, No. 25-CV-04072-NW, 2025 WL 1382859, at 3 (N.D. Cal. May 12, 2025)(temporary injunction warranted preventing re-arrest at plaintiff's ICE interview when he had been on bond for more than five years). See also *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, 4 (E.D. Cal. Mar. 3, 2025)(holding the Constitution requires a hearing before any re-arrest).

## **FACTUAL ALLEGATIONS**

15. SUNILKUMAR GANDABHAI PATEL's liberty from immigration custody is protected by the Due Process Clause: "Freedom from imprisonment- from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that (the Due Process) Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

16. Since June 4, 2024, SUNILKUMAR GANDABHAI PATEL exercised that freedom when him and his family were inspected and admitted into the United States by CBP and TSA Officers. As a result, he retained a weighty liberty interest under the Due Process Clause of the Fifth Amendment in avoiding re-incarceration. See *Young v. Harper*, 520 U.S. 143, 146-47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482-483 (1972).

17. Just as in *Morrissey*, SUNILKUMAR GANDABHAI PATEL's release "enables him to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, go to the doctor, take [his] medication, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.

18. SUNILKUMAR GANDABHAI PATEL has complied with all conditions for admission for well over two years, as he litigated his removal proceedings and creating a safe future and environment for his family. He has meritorious applications for relief from removal and currently has an appeal pending before the Board of Immigration Appeals.

**A. SUNILKUMAR GANDABHAI PATEL is Unlawfully Arrested and Detained Pursuant to DHS's New Policy;**

41. Deportation, like detention, constitutes a deprivation of liberty protected by the Due Process Clause. As the Supreme Court has held, a noncitizen's interest in deportation proceedings "is, without question, a weighty one" because "he stands to lose the right 'to stay and live and work in this land of freedom.'" *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (quoting *Bridges v. Wixon*, 326 U.S. 135, 154 (1945)).

42. SUNILKUMAR GANDABHAI PATEL asserts that, here, (1) where his detention would be civil, (2) where he has been at liberty for four years, during which time he has complied with all conditions of release and has maintained steady employment, (3) where he has a substantial application for Asylum, withholding and CAT pending before USCIS (4) where no change in circumstances exist that would justify his detention, and (5) where the only circumstance that has changed is ICE's move to arrest as many people as possible because of the new administration, due process mandates that he receive notice and a hearing before a neutral adjudicator prior to any re-arrest or revocation of a bond.

43. "Adequate, or due, process depends upon the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the government must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985)(en banc)(citing *Morrissey*, 408 U.S. at 481-82). This Court must "balance [SUNILKUMAR GANDABHAI PATEL'S] liberty interest against the government's interest in the efficient administer of" its immigration laws to determine what process he is owed to ensure that ICE does not unconstitutionally deprive him of his liberty. *Id.* at 1357.

44. Under the test set forth in *Mathias v. Eldridge*, this Court must consider these factors in conducting its balancing test: 'First , the private interest that will be affected by the official

action; second, the risk of an erroneous deprivation of such interest through the process used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Haygood*, 769 F.3d at 1357 (citing *Mathews v. Eldridge*, 424 U.S .319, 335 (1976).

45. Because, in this case, the provision for a pre-deprivation hearing is both possible and valuable to prevent an erroneous deprivation of liberty, ICE is required to provide SUNILKUMAR GANDABHAI PATEL with notice and a hearing prior to any re-incarceration and revocation of his pre-trial release. See *Morrissey*, 408 U.S. at 481-82; *Haygood*, 769 F2d at 1355-56; *Jones*, 393 F.3d at 932; see also *Youngberg v. Romeo*, 457 U.S. 307, 321-24 (1982); *Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984)(holding that individuals awaiting involuntary civil commitment proceedings may be constitutionally be held in jail pending the determination as to whether they can ultimately be committed). Under *Mathews*, "the balance weighs heavily in favor of [SUNILKUMAR GANDABHAI PATEL]" and requires a pre-deprivation hearing before a neutral adjudicator.

46. In 2024, Petitioner and his family fled to the United States to seek refuge. SUNILKUMAR GANDABHAI PATEL was admitted into the United States of America upon inspection by CBP and TSA Officers. In granting him admission into the United States of America, DHS determined that he posed little if any risk of flight or danger to the community.

47. In November 2024, SUNILKUMAR GANDABHAI PATEL filed his initial I-589, Application of Asylum and for Withholding of Removal before USCIS pursuant to 8 CFR § 208.2 and 8 CFR § 1208.2.

48. Since arriving to the United States and filing his affirmative application with USCIS, SUNILKUMAR GANDABHAI PATEL has attended every immigration appointment that he was required to attend. SUNILKUMAR GANDABHAI PATEL lived in New York with his spouse and two children. SUNILKUMAR GANDABHAI PATEL has attended all check-ins with USCIS.

49. In November 2024, SUNILKUMAR GANDABHAI PATEL applied for asylum based on well-founded fear of persecution in India.

50. Ever since SUNILKUMAR GANDABHAI PATEL entered the country, he has fully complied with all USCIS requirements.

51. Petitioner attempted to secure his release but was informed that the Immigration Court denied his motion for release. Petitioner subsequently retained undersigned counsel to represent him in this habeas corpus proceeding.

52. Since February 2026, SUNILKUMAR GANDABHAI PATEL remains in custody. At this time, there are no new circumstances that would justify a re-arrest of petitioner.

53. Because SUNILKUMAR GANDABHAI PATEL has never been determined to be a flight risk, his detention is not related to either of the permissible justifications for civil immigration litigation. His detention does not further any legitimate government interest.

**B. As a Result of His Arrest and Detention, SUNILKUMAR GANDABHAI PATEL is Suffering Ongoing and Irreparable Harm;**

54. SUNILKUMAR GANDABHAI PATEL is being deprived of his liberty without any permissible justification. The government previously admitted him into the United States because he did not pose sufficient risk of flight or danger to the community to warrant detention.

55. None of that has changed. On the contrary, SUNILKUMAR GANDABHAI PATEL appeared for every immigration appearance and he formed ties, as well as a life for himself and his family in the United States demonstrating that he is not a flight risk. As of August 6, 2025, he also has a United States Citizen born child.

56. SUNILKUMAR GANDABHAI PATEL is now separated from his only family in the United States and from his two children, ages 8 months and 4 years.

57. SUNILKUMAR GANDABHAI PATEL's family requires his presence as he is the financial head of household for his family.

58. SUNILKUMAR GANDABHAI PATEL is suffering from debilitating conditions at the MDC Brooklyn Detention Center.

**CLAIM FOR RELIEF**

**FIRST CLAIM OF RELIEF**

**Violation of the Fifth Amendment to the United States Constitution**

**(Substantive Due Process – Detention)**

59. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

60. The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

61. Immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring the noncitizen's appearance during removal proceedings and preventing danger to the community. See *id.*

62. Petitioner is not a flight risk or danger to the community. Respondents' detention of Petitioner is therefore unjustified and unlawful. Accordingly, Petitioner is being detained in violation of the Due Process Clause of the Fifth Amendment.

63. Moreover, Petitioner's detention is punitive as it bears no "reasonable relation" to any legitimate government purpose. *Id.* (finding immigration detention is civil and thus ostensibly "nonpunitive in purpose and effect"). Here, the purpose of Petitioner's detention appears to be "not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons"—namely, to meet newly-imposed DHS quotas. *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring).

## SECOND CLAIM FOR RELIEF

### Violation of the Fifth Amendment to the United States Constitution

### (Procedural Due Process – Detention)

64. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

65. As part of the liberty protected by the Due Process Clause, Petitioner has a weighty liberty interest in avoiding re-incarceration after his release. See *Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Morrissey v. Brewer*, 408 U.S.471, 482–83 (1972); see also *Ortega*, 415 F. Supp. 3d at 969–70 (holding that a noncitizen has a protected liberty interest in remaining out of custody following an IJ's bond determination).

66. Accordingly, "[i]n the context of immigration detention, it is well-settled that due process requires adequate procedural protection to ensure that the government's asserted Justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990; *Zinermon*, 494 U.S. at 127 (Generally, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."). In the immigration context, for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. See *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); see also *Martinez v. Clark*, 124 F.4th 775, 785, 786 (9th Cir. 2024).

67. Petitioner's detention without a pre-deprivation hearing violated due process. Almost two years after deciding to admit Petitioner into the United States of America, Respondents detained Petitioner with no notice, no explanation of the justification of his detention, and no opportunity to contest his detention before a neutral adjudicator before being taken into custody.

68. Petitioner has a profound personal interest in hiss liberty. Because he received no procedural protections, the risk of erroneous deprivation is high. And the government has no legitimate interest in detaining Petitioner without a hearing; bond hearings are conducted as a matter of course in immigration proceedings, and nothing in Petitioner's record suggested that he would abscond or endanger the community or a flight risk before a bond hearing could be carried out. See, e.g., *Jorge M.F. v. Wilkinson*, 2021 WL 783561, at \*3 (N.D. Cal. Mar. 1, 2021); *Vargas v. Jennings*, 2020 WL 5074312, at \*3 (N.D. Cal. Aug. 23, 2020) ("the government's concern that delay in scheduling a hearing could exacerbate flight risk or danger is unsubstantiated in light of petitioner's strong family ties and his continued employment.

## **THIRD CLAIM FOR RELIEF**

### **Violation of the Fifth Amendment to the United States Constitution**

### **(Unlawful Arrest)**

69. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

70. The Fourth Amendment protects the right of persons present in the United States to be free from unreasonable seizures by government officials.

71. As a corollary to that right, the Fourth Amendment prohibits government officials from conducting repeated arrests on the same probable cause. It is axiomatic that seizures have purposes. When those purposes are spent, further seizure is unreasonable. . . . [T]he primary purpose of an arrest is to ensure the arrestee appears to answer charges. . . . Once the arrestee appears before the court, the purpose of the initial seizure has been accomplished. Further seizure requires a court order or new cause; the original probable cause determination is no justification. *Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020); see also *United States v. Kordosky*, No. 88-CR-52-C, 1988 WL 238041, at *7 n.14 (W.D. Wis. Sept. 12, 1988) ("Absent some compelling justification, the repeated seizure of a person on the same probable cause cannot, by any standard, be regarded as reasonable under the Fourth Amendment.").

72. In the immigration context, this prohibition means that a person who immigration authorities released from initial custody or admitted into the United States, cannot be arrested "solely on the ground that he is subject to removal proceedings" and without some new, intervening cause. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196 (N.D. Cal. 2017), aff'd sub nom., *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Courts have long recognized that permitting such rearrests could result in "harassment by continual rearrests." *United States v. Holmes*, 452 F.2d 249, 261 (7th Cir. 1971).

73. DHS arrested the Petitioner on February 20, 2026, without providing him with any reasoning or presenting a warrant for his arrest. SUNILKUMAR GANDABHAI PATEL was handed over to the ICE officers and simply asked to turn around to be handcuffed. Petitioner had not engaged in any conduct in the intervening time that rendered him a flight risk or danger to the community. No material change in circumstances justified Petitioner's arrest.

74. Petitioner's arrest and detention by Respondents absent any material change in circumstances is thus an unreasonable seizure in violation of the Fourth Amendment.

## **PRAYER FOR RELIEF**

Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody;

3. Declare that Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the First Amendment, and the Administrative Procedure Act;

4. Enjoin Respondents from deporting Petitioner pending these proceedings;

5. Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community;

6. Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act and 28 U.S.C. § 2412; and

7. Grant such further relief as the Court deems just and proper.

Dated: May 14, 2026

Respectfully submitted by,

Harjot Singh, Esq.
Law Offices of Harjot Singh, P.C.
Attorney for the Petitioner-Plaintiff
Sunilkumar Gandabhai Patel

**VERIFICATION PURSUANT TO 28 U.S.C. 2242**

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. I have discussed the events described in the Petition with the Petitioner. Based on those discussions, I hereby verify that the factual statements made in the attached Amended Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on May 14, 2026, in New York, NY.

Dated: May 14, 2026

Respectfully submitted by,

Harjot Singh, Esq.
Law Offices of Harjot Singh, P.C.
Attorney for the Petitioner-Plaintiff
Sunilkumar Gandabhai Patel

Cc: Mary M. Dickman
    Assistant U.S. Attorney
    (631) 715-7863